IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


TIMOTHY R. JOHNSON,          :
                             :
          Plaintiff          :
                             :
     v.                      :   CIVIL NO. 3:CV-09-886
                             :
JEFFREY BEARD, ET AL.,       :   (Judge Conaboy)
                             :
          Defendants         :

_____

### MEMORANDUM
### Background

        Timothy R. Johnson initiated this <u>pro</u> <u>se</u> civil rights action

pursuant to 42 U.S.C. § 1983 during his prior confinement at the

State Correctional Institution, Huntingdon, Pennsylvania (SCI-

Huntingdon).[1]  *A*n Amended Complaint was filed by Johnson on

February 22, 2010.  <u>See</u> Doc. 46.  SCI-Huntingdon inmate Daniel

Manchas, III was subsequently granted leave to be joined as a

Plaintiff in this matter.

        By Memorandum and Order dated March 15, 2011, this Court

partially granted a motion to dismiss the Amended Complaint filed

by the Commonwealth Defendants.  <u>See</u> Doc. 93.  Defendant Shoaf's

motions to dismiss the claims of the respective Plaintiffs were

granted by Memorandums and Orders dated March 22, 2011 and August

23, 2011.  Plaintiff Johnson's surviving claims were dismissed for

failure to prosecute by Order dated March 8, 2012.

_____

1.  Johnson was later transferred to the Rockview State
Correctional Institution, Bellefonte, Pennsylvania.

By Memorandum and Order dated November 26, 2013, this Court granted Manchas' request to voluntarily dismiss his claims against Remaining Defendants Garman and Glorioso, as well as his conditions of confinement claims with the exception of two allegations.  In addition, Remaining Defendants' motion seeking entry of summary judgment was partially granted and Manchas' damage claims brought against Remaining Defendants in their official capacities were dismissed.[2]

As a result of the above rulings, the three (3) Remaining Defendants are the following SCI-Huntingdon employees: Superintendent Lawler; Safety Manager B. M. Ewell; and Utilities Manager Curtis Williams.  Remaining Plaintiff Manchas' two surviving allegations are:  1) he was exposed to unconstitutional powerhouse emissions; and (2) there were leaks in the ceiling and floors of his cell which caused mold and went uncorrected.

Presently pending is Remaining Defendants' motion for summary judgment.  <u>See</u> Doc. 204.  The opposed motion is ripe for consideration.

## <u>Discussion</u>

Remaining Defendants argue that they are entitled to summary judgment on the grounds: (1) Manchas failed to exhaust his available administrative remedies; (2) a viable conditions of confinement claim has not been asserted; and (3) Remaining Defendants are entitled to qualified immunity.

---

2.  Manchas's cross summary judgment motion and his second motion requesting leave to file a second amended complaint were also denied.

2

## Standard of Review

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Id. at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted). Summary

3

judgment should be granted where a party "fails to make a showing
sufficient to establish the existence of an element essential to
that party's case, and on which that party will bear the burden at
trial." <u>Celotex</u>, 477 U.S. at 322-23.  "'Such affirmative evidence
– regardless of whether it is direct or circumstantial – must
amount to more than a scintilla, but may amount to less (in the
evaluation of the court) than a preponderance.'" <u>Saldana</u>, 260 F.3d
at 232 (quoting <u>Williams v. Borough of West Chester</u>, 891 F.2d 458,
460-61 (3d Cir. 1989)).

**<u>Exhaustion</u>**

Remaining Defendants argue that Plaintiff failed to properly
exhaust his administrative remedies because his grievances did not
identify them by name.  <u>See</u> Doc. 205, p. 16.  Second, they contend
that a finding of non-exhaustion is appropriate because Manchas'
grievance relating to powerhouse emissions was not appealed to
final review.  <u>See</u> <u>id</u>. at p. 17.

> Section 1997e(a) of title 42 U.S.C. provides:

> No action shall be brought with respect to
> prison conditions under Section 1979 of
> the Revised Statutes of the United States
> (42 U.S.C. 1983), or any other federal
> law, by a prisoner confined in any jail,
> prison, or other correctional facility
> until such administrative remedies as are
> available are exhausted.

Section 1997e(a) requires administrative exhaustion
"irrespective of the forms of relief sought and offered through
administrative avenues." <u>Porter v. Nussle</u>, 122 S.Ct. 983, 992
(2002); <u>Booth v. Churner</u>, 532 U.S. 731, 741 n. 6 (2001).  Claims
for monetary relief are not excused from the exhaustion

4

requirement.  Nyhuis v. Reno, 204 F.3d 65, 74 (3d Cir. 2000).

Dismissal of an inmate's claim is appropriate when a prisoner has

failed to exhaust his available administrative remedies before

bringing a civil rights action.  Ahmed v. Sromovski, 103 F. Supp.

2d 838, 843 (E.D. Pa. 2000).  "[E]xhaustion must occur prior to

filing suit, not while the suit is pending."  Tribe v. Harvey, 248

F.3d 1152, 2000 WL 167468, *2 (6th Cir. 2000)(citing Freeman v.

Francis, 196 F.3d 641, 645 (6th Cir. 1999)); Oriakhi v. United

States, 165 Fed. Appx. 991, 993 (3d Cir. 2006).

       An inmate is not required to specifically plead or

demonstrate exhaustion in his or her complaint.  See Jones v. Bock,

549 U.S. 199, 216 (2007);  see also Ray v. Kertes, 285 F.3d 287 (3d

Cir. 2002)(a prisoner does not have to allege in his complaint that

he has exhausted administrative remedies).  Rather, pursuant to the

standards announced in Williams v. Runyon, 130 F.3d  568, 573 (3d

Cir. 1997), it is the burden of a defendant asserting the defense

of non-exhaustion to plead and prove it.[3]  The United States

Supreme Court in Jones noted that the primary purpose of the

exhaustion requirement is to allow prison officials to address

complaints before being subjected to suit, reducing litigation to

the extent complaints are satisfactorily resolved, and improving

litigation that does occur by leading to the preparation of a

useful record.

_____

3.    In Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003), the
United States Court of Appeals for the Third Circuit similarly
stated that "[f]ailure to exhaust administrative remedies is an
affirmative defense for the defendant to plead."

The administrative exhaustion mandate also implies a procedural default component. <u>Spruill v. Gillis</u> 372 F.3d 218, 222 (3d Cir. 2004). As explained by the Third Circuit Court of Appeals, a procedural default rule "prevents an end-run around the exhaustion requirement." <u>Id</u>. at 230. It also ensures "prisoner compliance with the specific requirements of the grievance system" and encourages inmates to pursue their administrative grievances "to the fullest." <u>Id</u>. Similarly, the Supreme Court has observed that proper exhaustion of available administrative remedies is mandatory, meaning that prisoners must comply with the grievance system's procedural rules, including time limitations. <u>Woodford v. Ngo</u>, 548 U.S. 81 (2006).

The Court of Appeals for the Third Circuit has recognized that "[t]here is no futility exception" to the exhaustion requirement. <u>Brown v. Croak</u>, 312 F.3d 109, 112 (3d Cir. 2002) (citing <u>Nyhuis</u>, 204 F.3d at 75. A subsequent decision by the Third Circuit Court of Appeals reiterated its no futility exception by rejecting an inmate's argument that exhaustion should be excused because prisoner grievances were regularly rejected. <u>Hill v. Smith</u>, 186 Fed. Appx. 271, 274 (3d Cir. 2006). The Court of Appeals has also rejected "sensitive' subject matter or 'fear of retaliation' as a basis for excusing a prisoner's failure to exhaust." <u>Pena-Ruiz v. Solorzano</u>, 281 Fed. Appx. 110, 113 (3d Cir. 2008).

A Consolidated Inmate Grievance Review System has been established by the Pennsylvania Department of Corrections ("DOC").[4] Section V of DC-ADM 804 (effective December 8, 2010) states that "every individual committed to its custody shall have access to a formal procedure through which to seek the resolution of problems or other issues of concern arising during the course of confinement." See Doc. 29, p. 8.  It adds that the formal procedure shall be known as the Inmate Grievance System and provides a forum of review and two (2) avenues of appeal.  Section VI ("Procedures") of DC-ADM 804 provides that, after attempted informal resolution of the problem, a written grievance may be submitted to the Facility Grievance Coordinator within fifteen (15) working days after the events upon which the claims are based, but allowances of extensions of time will be granted under certain circumstances.

An appeal from the Grievance Coordinator's Initial Review decision may be made in writing within ten (10) working days to the Facility Manager or Superintendent.  A final written appeal may be presented within fifteen (15) working days to the Secretary's Office of Inmate Grievances and Appeals (SOIGA).  A prisoner, in seeking review through the DOC grievance system, may include reasonable requests for compensation or other legal relief normally available from a court.  However, an improperly submitted grievance will not be reviewed.

---

4.  The DOC's grievance system has been periodically amended.

Remaining Defendants' initial non-exhaustion argument contends that they are entitled to entry of summary judgment because they were not identified by name or title in the institutional grievances filed by Manchas with respect to his two surviving claims.

It is undisputed that Plaintiff Manchas filed Grievance, No. 253890, complaining about the conditions in his cell (# 2047)  and Grievance, No. 230881, which raised complaints relating to prison boiler # 4 and related smoke emissions in the exercise yard.  This Court agrees that the two grievances did not mention any of the three Remaining Defendants by name or title.[5]

The Third Circuit Court of Appeals has recognized that under the DOC's administrative review system a prisoner's grievance should identify specific persons, if practicable.  Spruill, 372 F.3d at 234.  It held that an unexplained failure to identify a responsible prison official in a grievance constitutes a procedural default of the claim.  The Court of Appeals added that the prison's grievance process could excuse such a procedural default by identifying the unidentified person and acknowledging that they were fairly within the compass of the prisoner's grievance.  However, in Jones v. Bock, 127 S.Ct. 910, 923 (2007), the United States Supreme Court established that "exhaustion is not per se

_____

5.  This Court previously concluded that the Amended Complaint adequately alleged that Defendants Lawler, Ewell, and Williams had personal knowledge of unconstitutional conditions of confinement which existed at SCI-Huntingdon and failed to take appropriate corrective measures to protect the safety of Manchas. See Doc. 93, p. 11.

8

inadequate simply because an individual later sued was not named in the grievances."  The Supreme Court additionally indicated that the primary purpose of the exhaustion requirement is to allow "a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record."  Id.

Remaining Defendants have submitted a declaration under penalty of perjury by Corrections Superintendent Assistant Constance Green of SCI Huntingdon.  See Doc. 207-3.  Green states that Plaintiff fully  exhausted grievances relating to the conditions in Cell 2047.  See id.  Given the liberal treatment afforded to pro se litigants, the Supreme Court's holding in Jones, and since the substance of Manchas' claim that there were leaks in the ceiling and floors of his cell which caused mold and went uncorrected was adequately raised in the grievance, the request for entry of summary judgment on the basis of non-exhaustion of that claim will be denied.

With respect to Plaintiff's allegation regarding powerhouse emissions, it is argued that a finding of non-exhaustion is appropriate because Manchas' grievance did not identify any of the Remaining Defendants by name or title and because the inmate's administrative appeal of his grievance pertaining to powerhouse emissions was rejected because it was unsigned.  Due to that procedural failure, Manchas' unsigned administrative appeal was not considered on its merits and was procedurally defaulted.

In support of that argument, Remaining Defendants have submitted a copy of a September 22, 2008 final appeal decision regarding Grievance # 230881 which states that the appeal was being rejected because Manchas did not sign his name or inmate number to the appeal.  <u>See</u> Doc. 207-3, p. 32.  Also submitted is Superintendent Assistant Green's declaration which similarly provides that said grievance was not fully exhausted.

As previously mentioned, the United States Supreme Court has recognized that prisoners must comply with the grievance system's procedural rules.  <u>Woodford</u>, 548 U.S. at 93.  Since the undisputed record supports the conclusion that Plaintiff Manchas could have initiated a timely and proper grievance appeal regarding his powerhouse emissions claim but failed to do so, the Remaining Defendants' request for entry of summary judgment on the basis of non-exhaustion will be granted.[6]

**Conditions of Confinement**

Based upon a review of the undisputed record, Manchas seeks relief based upon his confinement in Cell 2047.  While residing in that cell the Remaining plaintiff filed a grievance relating to his living conditions.  Specifically, Manchas claimed that the cell was moldy, had leaks, and crumbling plaster.

Remaining Defendants assert that a viable conditions of confinement claim has not been set forth by Manchas.  In support of

---

6.  It is also noted that Manchas' institutional medical records do not reflect that he ever sought treatment for the taste of sulfur, sore throat, headaches or any medical issue due to inhaling powerhouse emissions.

that argument they have submitted a declaration under penalty of
perjury by Unit Manager Christian garman which provides that
Manchas was housed in cell # 2047 from June 16, 2008 until February
27, 2009.  <u>See</u> Doc. 207-4, ¶ 3.  During that period three work
orders were issued at the request of Manchas.[7]  Specifically, an
August 18, 2008 work order for cell wall cracking ; a September 3,
2008 work order because a large chunk of plaster fell from the cell
wall and February 10, 2009 a cracked and leaky sink.  As a result
of those work orders repairs were made to cell # 2047.  <u>See</u> <u>id</u>. at
¶ 5.

Also submitted is a declaration under penalty of perjury by
SCI-Huntingdon health care Administrator Paula Price who avers that
Manchas' institutional medical chart shows that he "has never been
diagnosed or treated for lung disease or a respiratory fungal
infection such as histoplasmosis or aspergillosis."  Doc. 207-8, ¶
5.

The Eighth Amendment's prohibition of cruel and unusual
punishment imposes duties on prison officials to provide prisoners
with the basic necessities of life, such as food, clothing,
shelter, sanitation, medical care and personal safety.  <u>See</u> <u>Farmer
v. Brennan</u>, 511 U.S. 825, 832 (1994); <u>Helling v. McKinney</u>, 509 U.S.
25, 31 (1993).  Prison conditions may amount to cruel and unusual
punishment if they cause "unquestioned and serious deprivations of
basic human needs ... [that] deprive inmates of the minimal

---

7.  Copies of the three work orders indicating that the requested
repairs were made accompany Garman's declaration.

civilized measure of life's necessities." <u>Tillman v. Lebanon County Correctional Facility</u>, 221 F.3d 410 (3d Cir. 2000).

In reviewing conditions of confinement claims, courts have stressed that the duration of the complainant's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" are critical to a finding of cruel and inhumane treatment.  <u>Hinterlong v. Hill</u>, 2006 WL 2303106 * 5-6  (E.D. Pa. August 8, 2006); <u>Nami v. Fauver</u>, 82 F.3d 63, 67 (3d Cir. 1996). Moreover, the focus must be on the deprivation of a particular basic necessity.  As explained in <u>Wilson v. Seiter</u>, 501 U.S. 294, 304-05 (1991):

> Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise – for example, a low cell temperature at night combined with a failure to issue blankets. To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as 'overall conditions' can rise to the level of cruel and usual punishment when no specific deprivation of a single human need exists.

Upon making a showing of conditions that pose a risk of serious harm, the inmate must establish that the prison official responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." <u>Id</u>. at 298.  A prison official violates the Eighth Amendment when he acts with deliberate indifference to a known objectively serious risk to a prisoner's

12

health or safety.  <u>See</u> <u>Farmer</u>, 511 U.S. at 837; <u>Beers-Capitol v.</u> <u>Whetzel</u>, 256 F. 3d 120, 125 (3d Cir.  2001).  This requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, 511 U.S. at 837.

To establish an Eighth Amendment claim, Manchas must show that the conditions of his confinement pose "a substantial risk of serious harm" to his health or safety.  <u>Farmer</u>, 511 U.S. at 834. However, there is no requirement that the Remaining Plaintiff show that he actually suffered serious injury.  A declaration by Manchas submitted in opposition to the pending summary judgment request states that he was housed in the cell at issue for a total of approximately seven (7) months, ending in February 2009 (three months before former Plaintiff Johnson filed this action and seven months before filing his motion for joinder in this matter). Manchas indicates that there were leaks coming from the ceiling "spots of mold, pungent odors and the wall and ceiling was falling apart."  Doc. 214 ¶ 24.  He acknowledges that after some delay a maintenance crew made repairs to his cell.

Toxic mold which causes inmate to suffer headaches, sinus problems, blurred vision, breathing difficulty, irritated eyes, and fatigue cans set forth a viable conditions of confinement claim. <u>Forde v. Fischer</u>, 2009 WL 5174650 *4 (D.N.J. Dec. 16,2009). However, the mere presence of mold does not indicate an objectively serious deprivation.  <u>Peterkin v. Jeffes</u>, 661 F.Supp. 895, 915 (E.D. Pa. 1987)(only mold which poses a real health hazard is

actionable).  In <u>Forde</u>, the district court dismissed the prisoner's claim that his cell had mold growing on three walls , the district court dismissed the prisoner's claim that his cell had mold growing on three walls Because "it left no room for a permissible inference that the mold in his cell posed a substantial risk of serious harm."  <u>Forde</u>, 2009 WL 5174650 at * 4.

It has been similarly held that the presence of black mold in a prison shower did not to rise to a constitutional violation where the inmate plaintiff has not presented any facts alleging a substantial risk of harm.  <u>Nickles v. Taylor</u>, 2010 WL 1949447 * 5 (D.N.J. May 14, 2010).  A perceived risk of future medical issues about mold exposure is likewise insufficient.  <u>See</u> <u>McIntyre v. Phillips</u>, 2007 WL 2986470 *2-3 (W.D. Mich. Sept. 10, 2007)

In the present case, Manchas states his cell had foul odors mold, and crumbling paint.  He add that those odors may come from domestic molds.  However, the Remaining Plaintiff admits that there were only "spots of mold."  Doc. 214 ¶ 24.  Manchas also acknowledges that "it is unclear whether there is any damage to the lungs."  Doc. 214, p. 5, ¶ 41.[8]

This is clearly not a case where a prisoner is contending that he was denied food, clothing, shelter, recreation, visitation, or medical care.  There is also no claim that Manchas was without access to a toilet, running water, or bedding.  Rather, Plaintiff alleges that he was exposed to spots of mold for a seven month

---

8.  Plaintiff Manchas raises several claims that he is being denied adequate medical treatment , however, those allegations are not presently before this Court.

period.  It is undisputed that in response to Plaintiff's requests,
three work orders were issued and repairs were made to his cell.
The undisputed record also provides that the Remaining Plaintiff
was only housed in Cell 2047 for approximately seven (7) months.
Moreover, Manchas was moved from Cell 2047 over five (5) years ago,
on February 27, 2009.  Remaining Defendants have also established
that Manchas has never been treated for lung disease or a
respiratory fungal infection and Plaintiff himself indicates that
it is unclear as to whether he suffered any lung damage.

        Based upon an application of the above cited legal standards
to the undisputed factual record, this Court is satisfied that
Plaintiff has not presented any facts alleging a substantial risk
of serious harm.  Accordingly, entry of summary judgment in favor
of the Remaining Defendants with respect to the claim that Manchas
was subjected to unconstitutional conditions of confinement while
housed in Cell 2047 during a seven month portion of 2008-09 is
appropriate.

**Qualified Immunity**

        Remaining Defendants' final summary judgment argument
maintains that they are entitled to qualified immunity because no
reasonable prison official would have believed that the conditions
of Manchas' confinement at SCI-Huntingdon were unconstitutional.
See Doc. 205, p. 19.

        Qualified immunity is an affirmative defense which must be
pleaded by the defendant official.  Verney v. Pennsylvania Turnpike
Comm'n, 881 F. Supp. 145, 149 (M.D. Pa. 1995).  In Harlow v.
Fitzgerald, 457 U.S. 800 (1982), the United States Supreme Court

held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818; Sherwood v. Mulvihill, 113 F.3d 396, 398-99 (3d Cir. 1997); Showers v. Spangler, 957 F. Supp. 584, 589 (M.D. Pa. 1997).  It has also been held that "qualified immunity is coextensive for suits brought against state officials under 42 U.S.C. § 1983 (1982), and for suits brought directly under the Constitution against federal officials." People of Three Mile Island v. Nuclear Regulatory Commissioners, 747 F.2d 139, 144 n.9 (3d Cir. 1984) (citing Butz v. Economou, 438 U.S. 478, 504 (1978)).

The United States Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001), subsequently established a two part test for analyzing qualified immunity claims.  See also Curley v. Klem, 298 F.3d 271 (3d Cir. 2002); Bennett v. Murphy, 274 F.3d 133 (3d Cir. 2002). The initial inquiry in a qualified immunity examination is whether "the facts taken in the light most favorable to the plaintiff show a constitutional violation." Bennett, 274 F.3d at 136.  The second prong requires a determination as to whether the constitutional right at issue was clearly established.  If so, then a court must inquire as to "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 201.  A determination that the conduct violated a clearly established constitutional right precludes the granting of qualified immunity.  Courts have the discretion in

16

deciding which of the two prongs should be addressed first. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

"[a] right is clearly established if it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted." Jones v. City of Jersey City, 2002 WL 1877036 *1 (3d Cir. 2002). Courts considering a request for qualified immunity must ask if a reasonable officer would have understood that his actions were prohibited. Bennett, 274 F.3d at 136. Under the standards developed in Jones and Bennett, it must be shown that the correctional official knew the constitutional right existed, ignored the right, and deliberately acted in violation of that right.

In light of the facts that cell maintenance was performed in response to Manchas' requests, the temporary length of his stay in Cell 2047, the fact that there is no indication that Manchas suffered any injury as a result of any condition in that cell, and viewing the facts in a light most favorable to the Plaintiff, this Court agrees that a constitutional violation has not been clearly established. Accordingly, since a reasonable officer would not have understood that a constitutional violation was occurring, the Remaining Defendants' request for qualified immunity with respect to the surviving conditions of confinement claims is also meritorious. An appropriate order will enter.

S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: SEPTEMBER 25, 2014

17